1
2
3
4
5
6
7

8                              UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     ARTHUR MCCONNELL,                          No.  2:18-cv-1916 DB

12                  Plaintiff,

13          v.                                     ORDER

14     ANDREW SAUL, Commissioner of Social
       Security,[1]
15

16                  Defendant.

17

18          This social security action was submitted to the court without oral argument for ruling on

19     plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]

20     Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion

21     evidence constituted error.

22     ////

23     ////

24     _____
       [1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019.
25     See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019).
       Accordingly, Andrew Saul is substituted in as the defendant in this action.  See 42 U.S.C. §
26     405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding
       the Office of the Commissioner shall, in his official capacity, be the proper defendant").
27

28     [2] Both parties have previously consented to Magistrate Judge jurisdiction over this action
       pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 7 & 10.)

1    For the reasons explained below, plaintiff's motion is granted, the decision of the

2  Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for

3  further proceedings consistent with this order.

4                              **PROCEDURAL BACKGROUND**

5    In October of 2014, plaintiff filed an application for Disability Insurance Benefits ("DIB")

6  under Title II of the Social Security Act ("the Act"), alleging disability beginning on October 1,

7  2012. (Transcript ("Tr.") at 15, 180-83.) Plaintiff's alleged impairments included degenerative

8  disc disease, depression, and dissociative identity disorder. (Id. at 204.) Plaintiff's application

9  was denied initially, (id. at 102-06), and upon reconsideration. (Id. at 109-13.)

10    Plaintiff requested an administrative hearing and a hearing was held before an

11  Administrative Law Judge ("ALJ") on January 31, 2017. (Id. at 32-63.) Plaintiff was represented

12  by an attorney and testified at the administrative hearing. (Id. at 32-35.) At the administrative

13  law hearing on January 31, 2017, plaintiff amended the disability onset date to September 2,

14  2014. (Id. at 37.) In a decision issued on May 16, 2017, the ALJ found that plaintiff was not

15  disabled. (Id. at 27.) The ALJ entered the following findings:

16      1. The claimant last met the insured status requirements of the
        Social Security Act on December 31, 2014.
17

18      2. The claimant did not engage in substantial gainful activity
        during the period from his amended onset date of September 2,
        2014 through his date last insured of December 31, 2014 (20 CFR
19      404.1571 *et seq.*).

20      3. Through the date last insured, the claimant had the following
        severe impairments: depression, personality disorder, anxiety
21      disorder, and degenerative disc disease (20 CFR 404.1520(c)).

22      4. Through the date last insured the claimant did not have an
        impairment or combination of impairments that met or medically
23      equaled the severity of one of the listed impairments in 20 CFR Part
        404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and
24      404.1526).

25      5. After careful consideration of the entire record, the undersigned
        finds that, through the date last insured, the claimant had the
26      residual functional capacity to perform medium work as defined in
        20 CFR 404.1567(c) except with the following limitations: perform
27      simple, repetitive, routine tasks not at a fast paced production; few
        changes in the workplace; simple work-related decisions; and able
28      to have brief, superficial interaction coworkers and the public.

                                    2

1
2

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

3

7.  The claimant was born [in] September [of] 1974 and was 40 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

4
5

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

6
7
8

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9
10
11

10.  Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

12
13
14

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from September 2, 2014, the amended onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(g)).

15

(Id. at 17-26.)

16

On May 14, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's

17

May 16, 2017 decision.  (Id. at 1-3.)  Plaintiff sought judicial review pursuant to 42 U.S.C. §

18

405(g) by filing the complaint in this action on July 11, 2018.  (ECF. No. 1.)

19

**LEGAL STANDARD**

20

"The district court reviews the Commissioner's final decision for substantial evidence,

21

and the Commissioner's decision will be disturbed only if it is not supported by substantial

22

evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).

23

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

24

support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

25

Chater, 108 F.3d 978, 980 (9th Cir. 1997).

26

"[A] reviewing court must consider the entire record as a whole and may not affirm

27

simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin.,

28

466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

3

1    1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

2    reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari, 298 F.3d 1072,

3    1075 (9th Cir. 2002).

4         A five-step evaluation process is used to determine whether a claimant is disabled. 20

5    C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

6    process has been summarized as follows:

7                     Step one:  Is the claimant engaging in substantial gainful activity?  If
                      so, the claimant is found not disabled.  If not, proceed to step two.
8
                      Step two:  Does the claimant have a "severe" impairment?  If so,
9                     proceed to step three.  If not, then a finding of not disabled is
                      appropriate.
10
                      Step three:  Does the claimant's impairment or combination of
11                    impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
                      Subpt. P, App. 1?  If so, the claimant is automatically determined
12                    disabled.  If not, proceed to step four.

13                    Step four:  Is the claimant capable of performing his past work?  If
                      so, the claimant is not disabled.  If not, proceed to step five.
14
                      Step five:  Does the claimant have the residual functional capacity to
15                    perform any other work?  If so, the claimant is not disabled.  If not,
                      the claimant is disabled.
16

17   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

18        The claimant bears the burden of proof in the first four steps of the sequential evaluation

19   process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden

20   if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094,

21   1098 (9th Cir. 1999).

22                                      **APPLICATION**

23        Plaintiff's pending motion argues that the ALJ's treatment of the medical opinion offered

24   by examining psychologist, Dr. T. Renfro, constituted error.  (Pl.'s MSJ (ECF No. 11) at 5-6.)

25   The weight to be given to medical opinions in Social Security disability cases depends in part on

26   whether the opinions are proffered by treating, examining, or nonexamining health professionals.

27   Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule,

28   more weight should be given to the opinion of a treating source than to the opinion of doctors

                                              4

1   who do not treat the claimant[.]" Lester, 81 F.3d at 830.  This is so because a treating doctor is

2   employed to cure and has a greater opportunity to know and observe the patient as an individual.

3   Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063

4   (9th Cir. 1990).

5          Here, Dr. Renfro was an examining physician.  The uncontradicted opinion of a treating or

6   examining physician may be rejected only for clear and convincing reasons, while the opinion of

7   a treating or examining physician that is controverted by another doctor may be rejected only for

8   specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at

9   830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial

10  evidence that justifies the rejection of the opinion of either an examining physician or a treating

11  physician." (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to

12  significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating

13  physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"

14  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec.

15  Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

16         The ALJ discussed Dr. Renfro's December 18, 2014 examination, stating:

17             At another psychological consultative examination with Dr. T.
               Renfro un (sic) December 2014, the claimant was cooperative; had
18             some mild psychomotor retardation; had slow speech with mild
               word-finding difficulty; endorsed auditory hallucinations, but was
19             not responding to internal stimuli; had euthymic mood with flat
               affect; had some impaired recent and immediate memory, but his past
20             memory was intact; could perform simple calculations but not
               multiplication; could not perform serial 3s but could follow the
21             conversation; and had intact judgment (Ex. 4F).

22  (Tr. at 21-22).

23         The ALJ went on to discuss Dr. Renfro's opinion rendered as a result of the December

24  2014 examination, stating:

25             Dr. Renfro opined that the claimant has moderate limitations in
               performing detailed tasks, accepting instructions, interacting with
26             others, performing consistently, maintaining attendance, and
               completing a normal workday (up to marked) (Ex. 4F).  Dr. Renfro
27             did not review any medical records and relied on the claimant's
               statements concerning his dissociative personality disorder.
28             Nevertheless, most of the restrictions opined are supported by the

5

1
2   findings during the examination and by other evidence in the record,
    including Dr. Griffith's statements that the claimant has focus and
3   attention issues.  The claimant was able to attend college for a time
    and indicated that he wanted to return, which suggests that he is able
4   to maintain some attention to more complex tasks (Ex. 10F).  In any
    case, his activities of daily living show a wide range of ability to
5   focus on tasks.  He is responsible for caring for his children, and his
    "blackouts" do not appear to be so extreme that he is unable to serve
    as a responsible person to his children.

6   (Tr. at 21-24.)

7        Although the ALJ's decision discusses Dr. Renfro's opinion, noting specifically that Dr.

8   Renfro acknowledged that the plaintiff would have "moderate limitations in performing detailed

9   tasks, accepting instructions, interacting with others, performing consistently, maintaining

10  attendance, and completing a normal workday (up to marked)," the ALJ's decision fails to discuss

11  what weight, if any, was assigned to Dr. Renfro's opinion or how the ALJ's residual functional

12  capacity determination ("RFC"), accounts from Dr. Renfro's opinion.

13       "The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue, 533 F.3d

14  1035, 1041 (9th Cir. 2008); see also Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir.

15  2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the

16  record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including

17  pain, that are reasonably attributed to a medically determinable impairment.").  As noted above,

18  the uncontradicted opinion of an examining physician may be rejected only for clear and

19  convincing reasons, while the opinion of an examining physician that is controverted by another

20  doctor may be rejected only for specific and legitimate reasons supported by substantial evidence

21  in the record. Lester, 81 F.3d at 830-31.

22       Further,

23       [w]here an ALJ does not explicitly reject a medical opinion or set
         forth specific, legitimate reasons for crediting one medical opinion
24       over another, he errs.  In other words, an ALJ errs when he rejects a
         medical opinion or assigns it little weight while doing nothing more
25       than ignoring it, asserting without explanation that another medical
         opinion is more persuasive, or criticizing it with boilerplate language
26       that fails to offer a substantive basis for his conclusion.

27  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted); see also Embrey v.

28  Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988) ("To say that medical opinions are not supported

                                        6

1    by sufficient objective findings or are contrary to the preponderant conclusions mandated by the

2    objective findings does not achieve the level of specificity... required, even when the objective

3    factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth

4    his own interpretations and explain why they, rather than the doctors', are correct.").

5            Additionally, it is important to note that

6            [c]ourts have recognized that a psychiatric impairment is not as
             readily amenable to substantiation by objective laboratory testing as
7            is a medical impairment and that consequently, the diagnostic
             techniques employed in the field of psychiatry may be somewhat less
8            tangible than those in the field of medicine.  In general, mental
             disorders cannot be ascertained and verified as are most physical
9            illnesses, for the mind cannot be probed by mechanical devices in
             order to obtain objective clinical manifestations of mental illness....
10           [W]hen mental illness is the basis of a disability claim, clinical and
             laboratory data may consist of the diagnoses and observations of
11           professionals trained in the field of psychopathology.

12   Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85

13   F.Supp.2d 986, 992 (C.D. Cal. 2000)).

14           Finally, with respect to the ALJ's reference to plaintiff's "activities of daily living," such

15   as "caring for his children,"

16           [t]he critical differences between activities of daily living and
             activities in a full-time job are that a person has more flexibility in
17           scheduling the former than the latter, can get help from other persons
             . . . and is not held to a minimum standard of performance, as she
18           would be by an employer.  The failure to recognize these differences
             is a recurrent, and deplorable, feature of opinions by administrative
19           law judges in social security disability cases.

20   Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

21           For the reasons stated above, the court finds that the ALJ failed to offer specific and

22   legitimate, let alone clear and convincing, reasons for rejecting Dr. Renfro's opinion.

23   Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of

24   the medical opinion evidence constituted error.

25   ////

26   ////

27   ////

28   ////

7

1

**CONCLUSION**

2          With error established, the court has the discretion to remand or reverse and award

3    benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded

4    under the "credit-as-true" rule for an award of benefits where:

5
                    (1) the record has been fully developed and further administrative
6                   proceedings would serve no useful purpose; (2) the ALJ has failed to
                    provide legally sufficient reasons for rejecting evidence, whether
7                   claimant testimony or medical opinion; and (3) if the improperly
                    discredited evidence were credited as true, the ALJ would be
8                   required to find the claimant disabled on remand.

9    Garrison, 759 F.3d at 1020.  Even where all the conditions for the "credit-as-true" rule are met,

10   the court retains "flexibility to remand for further proceedings when the record as a whole creates

11   serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social

12   Security Act."  Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015)

13   ("Unless the district court concludes that further administrative proceedings would serve no

14   useful purpose, it may not remand with a direction to provide benefits."); Treichler v.

15   Commissioner of Social Sec. Admin.., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ

16   makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand

17   the case to the agency.").

18          Here, plaintiff argues that this matter should be remanded for further proceedings and the

19   court agrees.  (Pl.'s MSJ (ECF No. 11) at 6.)  This matter will, therefore, be remanded for further

20   proceedings consistent with this order.

21          Accordingly, IT IS HEREBY ORDERED that:

22          1.  Plaintiff's motion for summary judgment (ECF No. 11) is granted;

23          2.  Defendant's cross-motion for summary judgment (ECF No. 14) is denied;

24          3.  The decision of the Commissioner of Social Security is reversed;

25          4. This matter is remanded for further proceedings; and

26   ////

27   ////

28

8

1

2          5.  The Clerk of the Court shall enter judgment for plaintiff and close this case.

3    Dated:  September 7, 2020

4

5

6    DLB:jal(6)
     DB\orders\orders.soc sec\mcconnell1916.ord

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9